# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **NEVA NEWBERRY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:08CV00049 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee*, *Lee & Phipps, P.C.*, *Wise, Virginia, for Plaintiff; Robert Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

The plaintiff Neva Newberry filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383 (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

Newberry applied for DIB and SSI benefits on May 27, 2004, alleging disability since September 21, 2003. (R. at 58, 905-06.) This claim was denied initially and on reconsideration, and Newberry received hearings before an administrative law judge ("ALJ") on March 7, 2006, and June 28, 2006. (R. at 855-901, 905.) A vocational expert and the plaintiff, who was represented by counsel, testified. (R. at 865-901.) By decision dated July 18, 2006, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (R. at 902-11.) The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was forty years old on the alleged disability onset date, making her a younger individual under the Commissioner's Regulations. *See* 20 C.F.R. § 404.1563(c) (2008). She has a high school education by virtue of passing the test for a general education diploma. (R. at 867.) In addition, the claimant earned a degree and became a licensed practical nurse ("LPN") in 2001. (R. at 867-68.) She worked as a machine operator, LPN, packer, and store clerk, but has not engaged in substantial gainful activity since September 21, 2003. (R. at 906.) She claims disability based on a number of problems including depression, anxiety, fibromyalgia, colitis, disc protrusion, irritable bowel syndrome, osteoarthritis, acid reflux, gall bladder surgery, degenerative joint disease, pain, swelling of her hands and feet, and attention deficit hyperactivity disorder. (R. at 906.)

Newberry complained of severe and chronic generalized pain. She was diagnosed with fibromyalgia based on her symptoms. (R. at 260, 267, 384, 402, 580, 706.) However, clinical examinations did not show joint abnormalities such as swelling, redness, heat, or deformity. (R. at 252-67, 383-89, 391-402.) Newberry complained of chronic back pain, but she did not have a documented severe impairment to the lumbar spine. (R. at 280, 381, 707-81.) X rays of the lumbar spine

- 3 -

Case 2:08-cv-00049-JPJ-PMS   Document 20   Filed 07/13/09   Page 3 of 16   Pageid#: 73

in September 2004 and January 2006 showed mild rotoscoliosis and mild disc space narrowing or spondylosis at L5-S1. (R. at 280, 381, 827.) X rays of the lumbar spine in May 2008 showed mild degenerative changes with mild scoliosis. (R. at 844.) An MRI of the lumbar spine in January 2005 showed degenerative changes and mild stenosis at L4-5 and L5-S1. (R. at 442-43.)

The plaintiff complained of several gastrointestinal problems. While she alleged irritable bowel syndrome, gastroesophageal reflux disease, and colitis, an abdominal series performed on December 28, 2003, was normal. (R. at 242.) On January 9, 2004, she was seen by David H. Smith, M.D., for an episode of rectal bleeding. (R. at 138-40.) However, a colonoscopy performed on January 29, 2004, was normal except for a few scattered diverticuli in the sigmoid colon and the ascending colon. (R. at 148.) On May 6, 2004, the plaintiff's gallbladder was removed during a laparoscopic cholecystectomy. (R. at 185-86.) However, she had no work limitations on this basis. (R. at 187.)

The plaintiff also received treatment for skin lesions. (R. at 346-57, 405-28, 710, 715.) However, there were no reported work restrictions on the basis of this impairment. (R. at 346-57.) There were some reports that these lesions related to self-mutilation. (R. at 413, 419, 425.)

Newberry complained of chronic headaches. She had a CTA of the head on February 6, 2006, which showed very tiny sessile aneurysms in the distal carotid siphon. (R. at 340.) These were considered to be of questionable clinical significance. (R. at 341.)

The plaintiff also complained of mental symptoms. She was seen briefly for mental health treatment in April and May of 1997, and was seen in 2000 related to her return to school. (R. at 108-17.) In April 2004, she received treatment for a suicide attempt involving drug overdose and alcohol abuse after her practical nursing license had been suspended. (R. at 154-82.) At that time, Newberry was diagnosed with major depressive disorder, recurrent; cannabinol abuse by history in sustained remission; and alcohol abuse by history. (R. at 173.) She was prescribed Effexor, Ambient, and Alprazolam. (R. at 174.)

Following hospitalization in April 2004, Deborah L. Weddington, M.D., Newberry's primary care physician, prescribed medication. (R. at 252-67.) Newberry saw a licensed clinical social worker four times between December 30, 2004, and March 17, 2005, and only once thereafter until February 2006. (R. at 445-49.) Her diagnoses during this time were attention deficit hyperactivity disorder, major depressive disorder, panic disorder, and antisocial traits. (R. at 449.)

Newberry also received treatment from psychiatrist Uzma Ehtesham, M.D. (R. at 455-57.) During these visits, she described problems with chronic pain, picking on her hands, nervousness, crying, and mood swings. (R. at 455-57.) Dr. Ehtesham reported diagnoses of major depressive disorder and generalized anxiety disorder. (R. at 455-57.) On April 26, 2006, Dr. Ehtesham noted that Newberry had a panic attack in the hospital and that she had stopped taking all medications. (R. at 455.) He reported no significant abnormality on clinical examination. (R. at 455.) A note from Timothy McBride, M.D., another treating source, on June 16, 2006, reflected that Newberry had been doing "fairly well with the anxiety." (R. at 454.)

Sharon J. Hughson, Ph.D., performed a consultative examination on December 21, 2004, and reported no significant abnormality. (R. at 288-93.) The plaintiff reported activities such as cooking, doing housework, managing finances, visiting others, and attending church weekly. (R. at 290.) The plaintiff's mental status examination was unremarkable. (R. at 291-92.) Specifically, she was appropriately groomed, had normal speech, had a good fund of general information, was oriented times three, demonstrated coherent and clear thoughts, and was alert. (R. at 292.) Dr. Hughson noted that Newberry provided conflicting information regarding her use of alcohol. (R. at 290.) Dr. Hughson reported diagnoses of attention deficit hyperactivity disorder, and alcohol and other substance abuse in full sustained

- 6 -

Case 2:08-cv-00049-JPJ-PMS   Document 20   Filed 07/13/09   Page 6 of 16   Pageid#: 76

remission according to the plaintiff. (R. at 292.) Dr. Hughson stated that Newberry was capable of detailed, complex, simple, and repetitive tasks, but that she would have a problem maintaining regular attendance and a normal workday or week because of her "behaviors." (R. at 293.)

Debra L. Harman, M.D., a physician from Oaks Family Medicine, submitted treatment notes from February 2004 through May 2004. (R. at 190-220.) Her treatment notes were nearly identical, reporting bowel problems and complaints of anxiety and depression. (R. at 190-220.) On May 7, 2004, Dr. Harman stated that Newberry was unable to work due to her "severe medical conditions." (R. at 189.) However, she did not offer an objective medical explanation for this statement. (R. at 189-220.)

The plaintiff's treating source, Dr. Weddington, completed a medical assessment form on July 26, 2004, stating that the plaintiff was unable to work for a period greater than ninety days. (R. at 260.) However, Dr. Weddington's most recent assessment on April 30, 2006, indicated that the plaintiff was able to perform certain jobs. (R. at 907.) Specifically, Dr. Weddington stated that Newberry could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and continuously lift and/or carry five pounds. (R. at 907.) She also noted that Newberry could sit, stand, and/or walk one hour at a time, sit and/or stand three hours

during an eight-hour day, and walk two hours during an eight-hour day. (R. at 907.) Dr. Weddington recommended that Newberry not perform jobs requiring pushing or pulling of arm controls, repetitive movements such as pushing or pulling of leg controls, crawling, climbing, work at unprotected heights, or work around moving machinery. (R. at 907.)

On February 16, 2005, Eugene Hamilton, Ph.D., performed a mental residual functional capacity assessment ("RFC") of the plaintiff. (R. at 294-311.) Dr. Hamilton found that Newberry was not significantly limited in her ability to remember locations and work-like procedures, to understand and remember very short and simple instructions, to carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, or to make simple work-related decisions. (R. at 294.) Newberry was moderately limited in her ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, and to perform activities within a schedule. (R. at 294.)

On February 22, 2005, Frank M. Johnson, M.D., performed a consultative examination of the plaintiff. (R. at 313-20.) Dr. Johnson concluded that Newberry could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, and sit for a

total of about six hours in an eight-hour workday. (R. at 314.) Dr. Johnson also reported that Newberry had no postural, manipulative, visual, communicative, or environmental limitations. (R. at 316-18.)

The evidence in this case includes the plaintiff's testimony regarding her subjective symptoms. (R. at 865-96.) During the hearing on June 28, 2006, the plaintiff complained of back pain, neck pain, joint problems, skin lesions, and stomach problems. (R. at 875-86.) She testified that she had not used alcohol since 1996 or 1997, and that she had never used drugs illegally. (R. at 890.)

The evidence in this case also includes the testimony of Cathy Sanders, a vocational expert. (R. at 896-901.) Ms. Sanders was asked to assume an individual of the plaintiff's age, education, and work history, who is restricted to the demands of light work activity allowing for postural changes and low stress jobs. (R. at 896-97.) She testified that the plaintiff could still perform jobs as a ticket clerk, mail sorter, administrative assistant, parking lot attendant, and hostess/greeter. (R. at 897.) Ms. Sanders stated that there are 1,350 of these jobs in the plaintiff's region, and 130,000 in the national economy. (R. at 897.) She reported that Newberry would still be able to perform these jobs according to the restrictions noted by Dr. Weddington on April 30, 2006. (R. at 897-99.) Ms. Sanders noted that if the plaintiff's ability to

concentrate and persist at work tasks were greater than moderately impaired, she would not be able to perform these jobs. (R. at 897.)

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

The Commissioner applies a five-step sequential evaluation process in assessing DIB and SSI claims. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2008). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See id.*; *Bowen v. Yuckert*, 482

U.S. 137, 141-42 (1987). The fourth and fifth steps in this inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2008).

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard has been applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotes omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff contends that the ALJ erred by improperly determining her RFC. I disagree.

The ALJ found that Newberry had severe degenerative disc disease of the lumbar spine, fibromyalgia, attention deficit hyperactivity disorder, and a history of major depression. (R. at 909.) However, the ALJ determined that Newberry did not have an impairment which met, or medically equaled, a listed impairment. (R. at 910.) Specifically, the ALJ found that Newberry retained the RFC to perform the physical exertion and non-exertional requirements of work, although she would not be able to perform medium to heavy exertion, jobs which do not allow for frequent postural changes, high stress, and complex work. (*Id.*) The ALJ found that while Newberry could not perform her past relevant work, she retained the ability to perform representative light work. (*Id.*)

Newberry argues that the ALJ erroneously discounted her mental and physical impairments. However, the record does not support the degree of limitations that she alleges. When determining a claimant's credibility regarding her limitations, the ALJ's observations should be given great weight. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). As noted by the ALJ, Newberry's allegations regarding her limitations are not totally credible. (R. at 23.)

Although the plaintiff relies on her testimony and subjective complaints of pain, those statements alone will never prove a finding of disability. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2008). At the very least, testimony must be corroborated

by objective medical evidence. 42 U.S.C.A. § 423(d)(5)(A). The plaintiff's case is devoid of substantiating objective medical evidence and contains inconsistencies that raise doubt regarding the legitimacy of her claim.

In order to meet the agency's definition of disability, the plaintiff must be precluded from work due to a medically determinable impairment. 20 C.F.R. §§ 404.1505(a), 416.905(a) (2008). However, Newberry stopped working not because of a medically determinable impairment, but instead due to the suspension of her LPN license caused by her inappropriate handling of drug paraphernalia and her failure to comply with subsequent mandated counseling. (R. at 177, 288, 290.) Newberry's inability to maintain her license is not an appropriate basis for disability.

Furthermore, Newberry's longstanding impairments of fibromyalgia and depression do not provide a basis for disability. In the Fourth Circuit, mere diagnosis of an impairment is insufficient to prove disability—the diagnosis must result in functional limitations that preclude a claimant's ability to work. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Here, no such physical or mental limitations were properly established. Newberry's diagnostic studies relating to fibromyalgia were benign, did not affirm her alleged level of pain, and did not show a worsening of her condition. (R. at 381, 442-43, 601-04.) The plaintiff's clinical examinations showed normal strength, a good range of motion, and no neurological deficits. (R.

at 190-203, 252-62, 405-39.) The plaintiff was treated conservatively, and there is no evidence that her condition warranted referral to a specialist for more significant treatment.

The plaintiff did have a brief exacerbation in April 2004 with her two-day mental health hospitalization, but this condition was improved by treatment. (R. at 154-82.) A condition that is amenable to treatment that can restore a claimant's ability to work does not serve as a basis of disability. *Gross*, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

While Dr. Harman and Dr. Weddington made statements expressing their opinions that the plaintiff was unable to work, these statements are not controlling. The opinion of a medical source is only controlling when the medical source is a treating source whose opinion is well-supported and well-explained by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). The disability statements from Dr. Harman and Dr. Weddington, however, are not supported by their own treatment notes. (R. at 190-203, 252-62.) For example, in her most recent assessment on April 30, 2006, Dr. Weddington indicated that Newberry was able to perform certain jobs. (R. at 907.)

- 14 -

Similarly, although Dr. Hughson stated that Newberry would have problems maintaining regular attendance and a normal workday or week because of her "behaviors," Dr. Hughson also stated that Newberry was capable of detailed, complex, simple, and repetitive tasks. (R. at 293.) She reported no significant abnormality upon consultative examination and stated that the plaintiff's mental status examination was unremarkable. (R. at 288-93.)

Consultative examiners Dr. Hamilton and Dr. Johnson confirmed that Newberry retained the functional capacity to work. (R. at 288-320.) Although Newberry stated that her conditions worsened after she lost her LPN license, Dr. Hamilton and Dr. Johnson both agreed that Newberry's statements were not fully credible. (R. at 310, 319.) After reviewing the plaintiff's record and relying on the benign findings of the examining physicians, Dr. Hamilton reported that Newberry's activities of daily living were only mildly limited. (R. at 296.) Dr. Johnson, relying on the negative clinical findings of record, stated that Newberry maintained the ability to do both light and sedentary work in the national economy. (R. at 313-20.) These opinions and the objective medical evidence provide substantial support for the ALJ's final decision.

It is the duty of the ALJ to find facts and to resolve the inconsistencies between a claimant's alleged symptoms and a claimant's ability to work. Notwithstanding the

- 15 -

Case 2:08-cv-00049-JPJ-PMS   Document 20   Filed 07/13/09   Page 15 of 16   Pageid#: 85

medical opinions of record, it is still the ALJ's sole responsibility to determine a claimant's RFC, or what she can still do despite her impairments. 20 C.F.R. §§ 404.1545, 416.945 (2008). The ALJ's factual findings are conclusive if they are supported by substantial evidence. *Richardson*, 402 U.S. at 401. The ALJ's determination that Newberry is not disabled is supported by the plaintiff's lack of credibility, the objective medical evidence, and the opinions of the consulting medical sources.

Accordingly, I find that there is substantial evidence to support the ALJ's decision.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: July 13, 2009

/s/ JAMES P. JONES
Chief United States District Judge